## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LATOYA FOUST**, individually, and on behalf of others similarly situated, | :<br>:<br>:   Case No: 1:23-cv-07314<br>: |
| Plaintiff, | :<br>:   Hon.<br>: |
| v. | :<br>:   Mag.<br>: |
| **HF MANAGEMENT SERVICES, LLC d/b/a HEALTHFIRST**, a limited liability company, | :<br>:<br>:<br>:<br>: |
| Defendant. | :<br>: |

### COLLECTIVE/CLASS ACTION COMPLAINT

Plaintiff, Latoya Foust ("Plaintiff"), hereby brings this Collective/Class Action Complaint against Defendant, HF Management Services, LLC d/b/a Healthfirst ("Defendant"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, The North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1, *et seq.* ("North Carolina Wage Act"), and common law.

2.      According to Defendant's website, Defendant has "grown into New York's largest not-for-profit health insurer, offering high-quality, affordable plans to fit every life stage, including Medicaid plans, Medicare Advantage plans, long-term care plans, qualified health

plans, and individual and small group plans."[1]

3.      In providing the aforementioned services, Defendant employed customer service representatives in its New York and Florida brick and mortar call centers and in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Service Agent, to refer to its customer service representatives (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to, among other things, receive calls from new and established Medicaid and Medicare participants and make outbound calls to home health aide agencies.

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing over-the-phone customer service.

5.      Defendant employed Plaintiff as an hourly call center employee with the job title of CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's hourly call center employees, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to

---

[1] *See* https://healthfirst.org/about-us (last visited Aug. 10, 2023).
[2] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited Aug. 10, 2023).

download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

9.      Defendant violated the FLSA, state wage and hour law and common law by requiring its CSRs to perform compensable work tasks before and after their scheduled shifts and prohibiting them from recording this time in Defendant's timekeeping system. The aforementioned policy and procedure resulted in these employees not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for straight time worked.

10.     More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to the start of their scheduled shift and completing after call notes, closing all work applications and systems they used during their shift, disconnecting from Defendant's server and shutting down their computer after the end of their scheduled shift or the last fielded call for the day.

11.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.     At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employee who worked for Defendant at any time in the past three years.

## **JURISDICTION AND VENUE**

3

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of New York, is registered with the New York Department of State, and maintains its principal place of business in the state of New York.

18.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District.

## PARTIES

19.      Plaintiff Latoya Foust is a resident of Fayetteville, North Carolina and worked remotely for Defendant as a non-exempt CSR from July 11, 2022 to March 7, 2023. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $18.25 per hour. Plaintiff Foust signed a consent to join this collective action, which is attached as **Exhibit A**.

20.    Additional Opt-In Plaintiffs were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

21.    Defendant HF Management Services, LLC is a New York limited liability company (DOS ID: 2368432) with its principal place of business located in New York, NY and a registered agent for service of process listed as Elizabeth St. Clair, Attn: Legal Department, 100 Church Street, New York, NY 10007.

## GENERAL ALLEGATIONS

22.    Defendant paid its CSRs at varying hourly rates.

23.    Defendant's CSRs typically worked four (4) to five (5) days each week and up to, and on occasion more than, forty (40) hours per week.

24.    While Defendant has access to all of the payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek.

25.    Prior to being hired, Defendant's Talent Acquisition – Human Resources department provided prospective CSRs with a written offer setting forth the job requirements and rate of pay.

26.    Defendant maintains documents demonstrating the promised hourly wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

27.    Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

28.    Plaintiff performed under the contract with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff took inbound calls from new and existing

Medicare and Medicaid patients, made outbound calls to patients, medical equipment vendors, and home health aide agencies and transferred calls to the retention department. The aforementioned customer service was provided via inbound and outbound calls and Plaintiff would utilize Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-clock work explained below.

29.     Defendant provided training to hourly call center employees, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSR was substantially, if not entirely, the same.

30.      At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

31.      Defendant required Plaintiff and all other CSRs to use a computer and a variety of essential and indispensable computer programs, applications, and servers in order to perform their job duties.

32.     Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started. This required Defendant's CSRs to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls and/or chats the moment their shift began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

33.     Defendant     enforced     this     policy     through     its     uniform     compensation     and

timekeeping procedures, the call quality assurance system it used to monitor and grade CSRs' calls, and its "departmental incentive" program. More particularly, Defendant utilized quality assurance guidelines to perform call assessments and required CSRs to meet various metrics and criteria worth pre-determined point values and totaling 100 points. For example, Defendant's CSRs were required to recite specific "HIPPA verbiage" to callers and a failure to do so resulted in CSRs being deducted up to four (4) points. Defendant's guidelines and quality assurance standards necessarily required CSRs to be logged into all computer programs, applications and systems at the time their scheduled shift started. Defendant also maintained a "departmental incentive" program through which it provided CSRs with points or "kudos" for meeting Defendant's metrics.

34.     Defendant's CSRs used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an important part of the CSRs' work and CSRs could not perform their jobs without them.

35.     Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift when they documented call notes, logged out of the programs and applications that they utilized during their shifts and shutdown their computer.

36.     Defendant maintained a timekeeping and compensation system that pressured and required Plaintiff and other call center employees to perform the above mentioned pre- and post-shift off-the-clock. More specifically, Defendant instructed Plaintiff and its CSRs to only "clock in" (record their time) seven (7) minutes before the start of their scheduled shift and to clock out the moment they finished fielding their last call for the day. If Defendant's CSRs included any additional time worked before the start of their scheduled shift, or clocked out after performing

the post-shift work described herein, Defendant would either "Send Back, Deny, or Cancel" the CSRs' timesheet and require the CSRs, including Plaintiff, to "correct" the CSRs' timesheet, including clock in and/or out times, and/or submit a "punch adjustment" form.

37.     The pre- and post-shift off-the-clock time Plaintiff and Defendant's CSRs spent booting-up/logging into and shutting down their computers, applications and programs, and documenting call notes directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

38.      As a result of the pre- and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately twenty (20) to thirty (30) minutes of compensation every shift.

39.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate them for the off-the-clock work they performed, thus breaching its agreements with Plaintiff and its CSRs.

40.      Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

41.     Despite knowing Plaintiff and all other CSRs performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

42.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and similarly situated CSRs booted-up and logged into their computers each shift, along with their clock in and out times in the timekeeping system.

43.     Upon information and belief, Defendant also possesses, controls, and/or has

access to information and electronic data indicating when Plaintiff and other CSRs experienced technical issues.

44.    Because Defendant required its CSRs, including Plaintiff, to perform pre- and post-shift work off-the-clock, and prohibited them from including all pre-shift hours worked in their clock in times recorded, including overtime hours, the hours tracked in Defendant's timekeeping system are inaccurate representations of the total amount of time the employees spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

**A. Pre-Shift Off-the-Clock Work**

45.    The off-the-clock pre-shift process took substantial time, approximately fifteen (15) to twenty (20) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

    a.  Turn on their computer;

    b.  Log into Microsoft Windows using a password;

    c.  Secure access to Defendant's server (the Virtual Private Network or "VPN") using Cisco AnyConnect; Defendant's CSRs had to enter their username and password, click "OK", then use a dual authentication process (Microsoft Authenticator) through which they entered into their computer an authentication token they received on their cell phone;

    d.  Log into Salesforce through Single Sign On or using a username and password if their password needed to be reset;

    e.  Open and log into TrueCare (the application Defendant's CSRs used to review the status of authorization approvals, send notes to members, and verify medical equipment being sent and the vendor responsible for the equipment);

    f.  Open CMS1200 (the application Defendant's CSRs used for Medicaid member information) through Single Sign On or using a username and password if their password needed to be reset;

    g.  Log into Verint (the scheduling application Defendant's CSRs used to monitor

their lunch/break times and coaching/meetings they had to attend);

    h.  Open various job aids that assisted Defendant's CSRs in fielding calls and performing their job duties;

    i.  Log into Cisco Jabber, Defendant's phone system, using their username and password;

    j.  Launch Microsoft Outlook, Defendant's application for receiving emails related to timekeeping, schedule changes, promotions/surveys, job aid updates, script changes, Zoom meeting information and more;

    k.  Connect to Zoom, Defendant's application for internal meetings;

    l.  Log into Defendant's Over the Card Network (Defendant's CSRs used this network to access information related to Medicaid money cards) through Single Sign On or using a username and password if their password needed to be reset;

    m.  Open Defendant's payment portal through Salesforce (Defendant's CSRs used this portal for assisting members with premium payments);

    n.  Log into Workday using;

    o.  Open Microsoft Teams, Defendant's "communication and collaboration tool"; and

    p.  Go into a "ready" status at the start of the scheduled shift.

46.    Defendant's employees had to complete this process before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to arrive to begin working at least fifteen (15) to twenty (20) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

47.    Defendant's CSRs were not compensated for all of this time because Defendant prohibited them from including more than seven (7) minutes of pre-shift time in their time recorded in Defendant's timekeeping system and the described duties took longer than seven (7) minutes each day.

48.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant,

and was integral and indispensable to their job duties and responsibilities.

## B. Post-Shift Off-the Clock Work

49.    Pursuant to Defendant's policies, training and direction, Plaintiff and similarly situated CSRs were required to clock out the moment they were done fielding their last call for the day and *before* finishing after call notes, closing all work applications and systems they used during their shift, disconnecting from Defendant's server and shutting down their computer. Plaintiff and other CSRs were not allowed to begin the shutdown and logout process they completed their last fielded call.

50.    This resulted in plaintiff and other CSRs performing an additional five (5) to ten (10) minutes every day.

51.    The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities.

## C. The Off-the-Clock Work Results in Viable "Gap Time" Claims

52.    Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

53.    Plaintiff and all similarly situated CSRs regularly worked non-overtime hours (i.e.

"gap time") for which they were not paid.

54.       During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with them.

**D.  <u>Plaintiff's Exemplary Workweek</u>**

55.       The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendants failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides her paystubs for the pay periods of July 24, 2022 – August 6, 2022 and February 19, 2023 – March 4, 2023:

**February 19, 2023 – March 4, 2023 Pay Statement**

- Plaintiff worked less than 40 hours in one week at a rate of $18.25 per hour and upon information and belief was paid $18.25 for each regular hour worked.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 20 to 30 minutes or more at her regular rate of $18.25 for each regular hour.

**Exhibit B**, Foust 2/19/23 – 3/4/23 Exemplary Pay Statement.

**July 24, 2022 – August 6, 2022 Pay Statement**

- Plaintiff worked more than 40 hours in one week at a rate of $18.25 per hour and upon information and belief was paid $27.375 per hour in overtime.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 20 to 30 minutes or more at her overtime rate of $27.375 for each hour worked in excess of 40 in the overtime workweek.

**Exhibit C**, Foust 7/24/22 – 8/6/22 Exemplary Pay Statement.

**<u>COLLECTIVE ACTION ALLEGATIONS</u>**

56.       Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf

of herself and on behalf of:

> All current and former hourly CSRs who worked for Defendant at any time during the three years preceding the date of an order from this Court granting conditional certification up through and including judgment.

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

57.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

58.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

59.    Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective were not paid for all regular and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

60.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

61.    Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

62.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes,

but is not limited to:

    a.   Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours they worked off-the-clock in non-overtime workweeks;

    b.   Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

    c.   Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

63.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

64.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

65.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are (1) required to work without compensation due to uncompensated boot up and log out time; and (2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

66.    Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number

should be readily available from a review of Defendant's personnel and payroll records.

67.    The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## <u>RULE 23 NORTH CAROLINA STATE LAW CLASS ACTION ALLEGATIONS</u>

68.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant in North Carolina during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff reserves the right to amend this definition if necessary.

69.    The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical. Plaintiff reasonably estimates there are thousands of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

70.    There is a well-defined community of interests among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class. These common legal and factual questions, include, but are not limited to, the following:

> a.    Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 North Carolina Class;

15

b. Whether the pre-shift time Rule 23 North Carolina Class members spent on startup and login activities each session before "clocking in" for each shift was compensable;

c. Whether the post-shift time Rule 23 North Carolina Class members spent closing all programs, applications and networks after "clocking out" is compensable;

d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member regular wages or minimum wage for each non-overtime hour worked;

e. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 North Carolina Class member overtime compensation for each overtime hour worked; and

f. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 North Carolina Class.

71.     Plaintiff's claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

72.     Plaintiff will fully and adequately protect the interests of the Rule 23 North Carolina Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23

North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

74.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former hourly CSRs who worked for Defendant at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

78.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably

estimates there are thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a.  Whether Defendant failed to keep accurate time and payroll records for Plaintiff and the Rule 23 Nationwide Class;

   b.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

   c.  Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

   d.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

   e.  Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

80.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

81.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of

nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

82.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

83.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

84.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85.     Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I
FLSA COLLECTIVE ACTION
VIOLATION OF THE FAIR LABOR STANDARDS ACT,
29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

86.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

87.     At all times relevant to this action, Defendant was subject to the mandates of the

FLSA, 29 U.S.C. § 201, *et seq*.

88.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

89.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

90.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

91.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

92.    Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

93.    The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

94.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

95.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre- and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it

occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

96.      The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

97.      In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

98.      As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight time and overtime wages in violation of the FLSA.

99.      Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

100.     As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NORTH CAROLINA CLASS ACTION**
**VIOLATIONS OF NORTH CAROLINA WAGE AND HOUR ACT**
**N.C.G.S. §§ 95-25.1, *et seq.* ("NORTH CAROLINA WAGE ACT")**

101.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

102.    At all times relevant to the action, Defendant was an employer covered by the overtime mandates of the North Carolina Wage Act, and Plaintiff and the Rule 23 North Carolina Class were employees entitled to the North Carolina Wage Act's protections.

103.    The North Carolina Wage Act entitles employees to compensation for every hour worked in a workweek. *See* N.C.G.S. § 95-25.3.

104.    The North Carolina Wage Act entitles employees to overtime compensation "not less than time and one-half of the regular rate of pay of the employee for those hours in excess of 40 hours per week." *See* N.C.G.S. § 95-25.4.

105.    Defendant violated the North Carolina Wage Act by regularly and repeatedly failing to compensate Plaintiff and the Rule 23 North Carolina Class for the time spent on the work activities described in this Complaint.

106.    Defendant's uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

107.    As a result, the Rule 23 North Carolina Class have and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 North Carolina Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the North Carolina Wage Act at an amount to be proven at trial. *See* N.C.G.S. § 95-25.22.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**BREACH OF CONTRACT**

108.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

109. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

110. Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for hourly employee work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

111. For example, Defendant offered to compensate Plaintiff at a minimum of $18.25 per hour if she agreed to perform services for Defendant as a CSR.

112. Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

113. Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $18.25 per hour within the applicable period.

114. By not paying Plaintiff and every other Rule 23 Nationwide Class member their fixed, pre-agreed upon hourly rate for *all* of the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts

with Plaintiff and each member of the Rule 23 Nationwide Class.

115.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

116.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

117.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

118.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT IV**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

119.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

120.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

121.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's

benefit.

122.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

123.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

124.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

125.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

126.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

127.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

128.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

129.    As a direct and proximate result of Defendant's actions, Plaintiff and every other

Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

### RELIEF REQUESTED

WHEREFORE, Plaintiff requests the following relief:

a.     An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.     An Order certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's North Carolina state law claims (Count II);

c.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count III);

d.     An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count IV);

e.     An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 North Carolina Class members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

f.     An Order designating the Plaintiff as representative of the FLSA Collective, the Rule 23 North Carolina Class and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

g.     An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

h.     An Order declaring Defendant's violations of the FLSA were willful;

i.     An Order declaring Defendant violated North Carolina state law for failing to pay Plaintiff and the Rule 23 North Carolina Class the minimum wage and overtime compensation to which they were entitled;

j.     An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

26

k.    An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Nationwide Class to perform;

l.    An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 North Carolina Class and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

m.    An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as provided by statute;

n.    An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

o.    An Order awarding such other and further relief as this Court deems appropriate.

Dated: August 17, 2023                          Respectfully Submitted,

                                                                /s/ Jason T. Brown
                                                                Jason T. Brown
                                                                BROWN, LLC
                                                                111 Town Square Place, Suite 400
                                                                Jersey City, NJ 07310
                                                                T: (877) 561-0000
                                                                F: (855) 582-5297
                                                                jtb@jtblawgroup.com

                                                                Kevin J. Stoops (*pro hac vice* forthcoming)
                                                                Alana Karbal (*pro hac vice* forthcoming)
                                                                SOMMERS SCHWARTZ, P.C.
                                                                One Towne Square, 17th Floor
                                                                Southfield, Michigan 48076
                                                                Telephone: 248-355-0300
                                                                kstoops@sommerspc.com
                                                                akarbal@sommerspc.com

                                                                *Attorneys for Plaintiffs and the Putative*
                                                                *Class/Collective Action Members*

## JURY DEMAND

Plaintiff, Latoya Foust, individually and on behalf of all others similarly situated, by and

through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of

Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 17, 2023                          Respectfully Submitted,

                                                /s/ Jason T. Brown
                                                Jason T. Brown
                                                BROWN, LLC
                                                111 Town Square Place, Suite 400
                                                Jersey City, NJ 07310
                                                T: (877) 561-0000
                                                F: (855) 582-5297
                                                jtb@jtblawgroup.com

                                                Kevin J. Stoops (*pro hac vice* forthcoming)
                                                Alana Karbal (*pro hac vice* forthcoming)
                                                SOMMERS SCHWARTZ, P.C.
                                                One Towne Square, 17th Floor
                                                Southfield, Michigan 48076
                                                Telephone: 248-355-0300
                                                kstoops@sommerspc.com
                                                akarbal@sommerspc.com

                                                *Attorneys for Plaintiffs and the Putative*
                                                *Class/Collective Action Members*